UNITED STATES of America, Plaintiff,

v.

Michael Robert
RICHARDSON, Defendant.

No. 88–8–01–CR–3.

United States District Court,
E.D. North Carolina,
Fayetteville Division.

May 13, 1988.

Captain John Belser, Sp. Asst. U.S. Atty., Ft. Bragg, N.C., for plaintiff.

William O. Richardson, Fayetteville, N.C., for defendant.

TERRENCE WILLIAM BOYLE, District Judge.

Michael Robert Richardson pled guilty to three counts of theft of government property and one count of breaking and entering. Defendant is scheduled to be sentenced by the undersigned United States District Judge. Defendant has filed a motion to preclude application of the Sentencing Guidelines. For the following reasons, defendant's motion is DENIED.

Defendant argues that the Sentencing Guidelines are unconstitutional because they violate separation of powers principles, were made pursuant to an unconstitutional delegation of power from Congress, are violative of the Due Process Clause, and are inconsistent with the Sentencing Reform Act of 1984. Finally, defendant argues that the Guidelines cannot be applied to offenses committed before December 19, 1987. The court will briefly address these arguments in turn.

Defendant argues that the placement of the Sentencing Commission in the judicial branch violates separation of powers principles. The power of the courts is, of course, restricted to those powers incident to deciding cases and controversies. The placement of Article III judges on the Commission does not necessarily entangle the entire judicial branch in a quasi-legislative function:

> While it is true that the judicial power has always been restricted to deciding cases or controversies, however, it is not true that judges have always been precluded from doing anything other than deciding such cases or controversies. In-

deed, it is well settled that Congress may authorize judges to perform tasks that aid in the performance of their judicial function.

*United States v. Ruiz–Villanueva,* 680 F.Supp. 1411 (C.D.Cal., 1988). The *Ruiz–Villanueva* court conceded that in certain circumstances the presence of a judge on a non-adjudicatory body could run afoul of the Constitution. Nevertheless, the court concluded that through application of the "functional" standard set forth in *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), neither the active judges on the Commission nor the judicial branch as a whole had obtained an unconstitutional grant of power. This court agrees with the *Ruiz–Villanueva* court on that point.

Other separation of powers problems arise, however, as a result of the composition of the Commission and its placement within the Judicial Branch. Reading Article II in conjunction with Article III, it is clear that the Constitution provides for two distinct classes of judicial "officer." The first class of "officer" consists of those justices and judges of the United States who are appointed under Article III. These officers are nominated by the President and appointed by and with advice and consent of the Senate. Under the dictates of Article III, these persons hold their office during good behavior and receive undiminished compensation during the continuance in office.

The other class of judicial "officers" consists of those appointed through Article II, sec. 2, cl. 2 in which Congress is given authority to vest the appointment of inferior officers "as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."

In constructing the Sentencing Commission within the Judicial Branch, both Article III officers and Article II officers have been placed on the Commission in order to insure the statutorily mandated broad base of representation. This hybrid Commission, however, is not an exclusively judicial entity. Its composition, powers, and duties, although primarily judicial, are also

legislative. On its face this creates a separation of powers problem because of the President's removal power over commissioners. The problem, however, is not constitutionally defective.

Although the President may remove commissioners for "neglect of duty or malfeasance in office or for other good cause shown," this provision does not violate Article III. The Commission is an independent entity. Even though it has been constructed in the Judicial Branch, it is significantly independent such that traditional separation of powers principles are inapplicable. The President is directed to consult with "representatives of judges, prosecuting attorneys, defense attorneys, law enforcement officials, senior citizens, victims of crime, and others interested in the criminal justice process" before appointing commissioners. 28 U.S.C. § 991(a). Additionally, the President is to select three commissioners from a list of six Federal judges submitted to him by the Judicial Conference of the United States. Moreover, no more than four members of the Commission shall be members of the same political party.

The conclusion to be drawn from the composition and function of the Commission is that it does not fit squarely into any one of the three branches. The President's removal power, then, is far less significant than if the Commission was wholly a part of the Judicial Branch. As the court in *Ruiz–Villanueva* stated:

> To say that sentencing is primarily a judicial function is not to say that the establishment of sentencing policy necessarily implicates the Article III judicial power, however, Congress expressly created an "independent commission"—a body that, from all appearances, would assist in the primarily judicial task of sentencing without itself exercising the judicial power.

The *Ruiz–Villanueva* court concluded by interpreting the Act in the following manner:

> In essence, the court regards the work of the Commission to be in aid of the judicial sentencing function. This under-

standing proceeds initially from an examination of the Act itself and its legislative history. The unmistakable intention of Congress in enacting sentencing reform was to eliminate the "shameful disparity" in federal sentences.... In order to effectuate this limited purpose, the Act did not direct the Commission to establish new crimes or penalties. Nor did the Act authorize the Commission to discourse on broad issues of sentencing philosophy. Instead, the Act merely directed the Commission to synthesize congressionally mandated sentencing policy into a format which would assist judges in imposing fair and uniform sentences. This directive does not violate the constitutional principle of separation of powers.

This construction of the Act is consistent with the long held policy of the courts to construe legislation to avoid constitutional pitfalls unless this construction is clearly contrary to the intent of Congress. *N.L.R. B. v. Catholic Bishop*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979).

■ On the basis of the court's reasoning in *Ruiz–Villanueva*, this court holds that the application of the Guidelines does not violate separation of powers principles. *See also United States v. Chambless*, 680 F.Supp. 793 (E.D.La., 1988).

■ Defendant's contention that the Guidelines are the result of an unconstitutional delegation of power by Congress is also unpersuasive. Article I of the Constitution vests all legislative powers in the Congress. Nevertheless, congressional delegations accompanied with "intelligible standards and statements of purpose" have consistently met constitutional muster, especially in the post-New Deal era. *Ruiz–Villanueva; Chambless. See also National Cable Television v. United States*, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974). The Sentencing Reform Act makes its purpose clear in attempting to remedy the perceived ill of divergent sentences for similar crimes in different jurisdictions. The Act provides sufficient guidance to meet constitutional standards. According-

ly, defendant's argument based on an unconstitutional delegation must fail.

■ Defendant also argues that because the Commission has established minimum sentences for certain crimes, and that the Commission is an arm of the executive, that he is deprived of his due process protections under the Constitution. Again the reasoning of the District Court in *Ruiz–Villanueva* is compelling. That court pointed out that the only element of control the President has over sentencing is his power to remove members of the Commission. This fact, however, does not deprive defendant of due process protections. As defendant recognizes, the court may depart from the Guidelines in a variety of cases including situations in which the defendant has provided assistance to the government. Defendant is not divested of his due process rights if the court makes this determination without an independent hearing. On the basis of the court's reasoning in *Ruiz–Villanueva*, this court finds that the application of the Guidelines will not violate defendant's due process rights under the Constitution.

Defendant also argues that the Guidelines are inconsistent with the Sentencing Reform Act. This conclusion is not supported by a review of the argument and evidence presented. *See Chambless.*

■ Finally, defendant argues that the Guidelines do not apply to crimes alleged committed before December 19, 1987. This court finds that submission of the Guidelines and the Commission's initial report to Congress were sufficient to trigger the November 1, 1987 effective date. *See Chambless.*

For the foregoing reasons, the court hereby DENIES defendant's motion to preclude application of the Sentencing Guidelines.