**UNITED STATES of America**

v.

**Morris RICHARDSON.**

**CR88–222–1A.**

United States District Court,
N.D. Georgia.

Aug. 9, 1988.

Nicolette S. Templer, Asst. U.S. Atty., for U.S.

Shelia Tyler, Federal Defender Program, Atlanta, Ga., for Richardson.

## ORDER

RICHARD C. FREEMAN, District Judge.

This action is before the court on defendant's motion to preclude application of the mandatory sentencing guidelines ("guidelines"), which the United States Sentencing Commission ("Commission") promulgated pursuant to the Sentencing Reform Act of 1984 ("Act"), 28 U.S.C. §§ 991–98. Defendant contends that the Act is unconstitutional because it impermissibly delegates legislative power to determine sanctions for criminal conduct and because the composition of the Commission violates the separation of powers doctrine.

## STATUTORY FRAMEWORK

The Commission consists of seven voting members, of whom at least three shall be Article III Federal judges and the remaining members shall be private citizens. 28 U.S.C. § 991(a). The Commissioners are appointed by the President, with the advice and consent of the Senate, for staggered six-year terms. The President may remove a Commissioner only for "neglect of duty or malfeasance in office or for other good cause shown." 28 U.S.C. § 991(a).

The Commission's duties include promulgation of guidelines for determining the sentence to be imposed in a criminal case; general policy statements about the application of the guidelines; and guidelines regarding the use of provisions for revocation of probation and modification of terms and conditions of supervised release. 28 U.S.C. § 994(a). The guidelines are binding upon the judiciary and have the force and effect of regulations issued by administrative or executive agencies.

## DELEGATION DOCTRINE

■ Defendant contends that Congress may never delegate the power to determine criminal sanctions, and that, even if it could, the present delegation is unconstitutionally broad. These arguments are without merit. First, the court rejects the contention that there are certain "core functions" that are nondelegable. *See United States v. Ruiz–Villanueva,* 680 F.Supp. 1411 (S.D.Cal.1988). Second, the Supreme Court has held that Congress may delegate legislative power if it supplies "by legislative act an intelligible principle to which the person or body authorized to [issue regulations] is directed to conform." *National Cable Television Ass'n v. United States,* 415 U.S. 336, 342, 94 S.Ct. 1146, 1150, 39 L.Ed.2d 370 (1974) (quoting *Hampton & Co. v. United States,* 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1927)). The court has reviewed and considered carefully the Act, and finds that Congress has set forth sufficient "intelligible principles" and provided adequate guidance to the Commission to satisfy this standard. *See, e.g.,* 28 U.S.C. §§ 991(b) and 994.

## SEPARATION OF POWERS

■ The principle of separation of powers is the cornerstone upon which our government is built. The division of power among the three coordinate branches of government and the corresponding checks and balances are a "safeguard against the encroachment or aggrandizement of one branch at the expense of the other." *Morrison v. Olson*, — U.S. —, 108 S.Ct. 2597, 2620, 101 L.Ed.2d 569 (1988) (quoting *Buckley v. Valeo*, 424 U.S. 1, 122, 96 S.Ct. 612, 684, 46 L.Ed.2d 659 (1976)). This constitutional structure ensures that those who create the law are separate from those who execute the law, and that both are separate from those who interpret and apply the law. The branches need not maintain a complete division of authority, *Nixon v. Administrator of General Services*, 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977), but the branches may not impermissibly encroach upon each other. One branch may not assume the function of another, *Buckley*, 424 U.S. at 123, 96 S.Ct. at 684, even if another branch authorizes the assumption of such function, nor may one branch impermissibly interfere with the proper functioning of another. *Nixon*, 433 U.S. at 443, 97 S.Ct. 2790.

The Act places the Commission within the judicial branch. 28 U.S.C. § 991(a). However, the assigned functions and duties of the Commission are not judicial in nature. The Commission does not decide cases or controversies, nor does it aid in the administration of the court system. Rather, the Commission is charged with the responsibility of fleshing out the legislative mandate, which is inherently an executive function. *See Bowsher v. Synar*, 478 U.S. 714, 733, 106 S.Ct. 3181, 3192, 92 L.Ed.2d 583 (1986) ("Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law"). The placement of an essentially executive commission within the judicial branch violates the separation of powers required by the Constitution. U.S. Const. art. III, § 2, cl. 1.

The government concedes that the function of the Commission to establish sentencing guidelines is executive in nature. However, the government appears to consider the placement of the Commission in the judicial branch almost as a typographical error that this court may overlook. The government, in effect, urges the court to rewrite the Act in order to place the Commission in the executive branch and remove it from the judicial branch. In some instances a court may sever unconstitutional statutory language, and thus uphold the statute. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 107 S.Ct. 1476, 1480–81, 94 L.Ed.2d 661 (1987). The court, however, has no authority to usurp the congressional power to restructure the Act when to do so would frustrate congressional intent. The Senate Committee on the Judiciary explicitly stated that "[p]lacement of the Commission in the judicial branch is based on the Committee's strong feeling that, even under this legislation, sentencing should remain primarily a judicial function." S.Rep. No. 98–225, 98th Cong., 2nd Sess. 159 (1983), *reprinted in*, 1984 U.S. Code Cong. & Ad. News at 3182, 3342. Therefore, the court finds that the placement of the Commission in the judicial branch violates the Constitutional requirement of separation of powers, and that the offending provisions cannot be severed from the Act without substantially undermining congressional intent.

Even if the Act were rewritten to assign the Commission to the executive branch, it would violate the doctrine of separation of powers because the Act requires the presence of at least three Article III judges on the Commission. *See* 28 U.S.C. § 991(a). The Supreme Court has stated repeatedly that "executive or administrative duties of a nonjudicial nature may not be imposed on judges holding office under Art. III of the constitution." *See Morrison v. Olson*, 108 S.Ct. at 2612; *Buckley v. Valeo*, 424 U.S. at 123, 96 S.Ct. at 684; *United States v. Ferreira*, 54 U.S. (13 How.) 40, 14 L.Ed. 40 (1852). Whether the assignment of nonjudicial duties to Article III judges violates the separation of powers depends upon first, whether the assignment "prevents

the [judicial] branch from accomplishing its constitutionally assigned functions." *Nixon v. Administrator of General Services*, 433 U.S. at 443, 97 S.Ct. 2790. Second, if it does, the court must determine whether "that impact is justified by an overriding need to promote objectives within the constitutional authority" of the judicial branch. *Id.*

Defendant argues persuasively that the function of the judiciary is impaired impermissibly by the threat to its impartiality and independence. "Impartiality is one of the central, constitutionally-ordained, requirements of federal judicial office...." *In re application of the President's Commission on Organized Crime Subpoena of Scaduto*, 763 F.2d 1191, 1197 (11th Cir. 1985). In *Scaduto* the Eleventh Circuit held that the presence of Article III judges on the President's Commission on Organized Crime violated the doctrine of separation of powers. *Id.* at 1198. The court stated that a judge's impartiality might be threatened, or appear to be threatened, by the kind of information on organized crime that he received through his work on the commission. The court reasoned that the members of the commission would have to adopt a pro-government stance to assist and improve efforts to fight organized crime. Such a perspective would conflict with a judge's responsibility to remain impartial in the exercise of his judicial duties.

The threat to the impartiality of the judges on the Sentencing Commission is no less real. In their role as Commissioners the judges are required to write the law on sentencing. As judges, these same individuals must apply the law they have written. It is little wonder that criminal defendants and the public have the perception that the Commissioner-judges are not impartial. Moreover, a greater threat exists to the judiciary as a whole. The judicial branch must surrender at least three of its members to service on an executive commission. The Act requires an on-going and permanent relationship between the executive and the judiciary that endangers the independence of the judiciary. Additionally, the placement of appointment and removal power in the President threatens the ap-

pearance of the independence of the Commissioner-judges and the judiciary. The court finds that this intermingling of the judiciary and the executive substantially impairs the essential independence and impartiality of the judiciary.

The court does not believe that this impairment of function can be justified by any "overriding need" to have Article III judges sitting on the Commission. The expertise in sentencing provided by judges could as easily be supplied by former judges, criminal lawyers, or consultation with Article III judges. In conclusion, the court finds that the requirement that Article III judges be members of the Commission violates the doctrine of separation of powers.

CONCLUSION

The guidelines abolish the discretion in sentencing formerly possessed by judges. In an effort to reduce the problem of disparity in sentencing, the guidelines, instead, substitute mechanical grids for the exercise of considered judgment. Had Congress itself undertaken this task, the court could doubt only the wisdom, and not the constitutionality of the Act. Congress' attempt to solve the problem of disparity in sentencing by creating an unaccountable body to make these difficult policy choices may be politically expedient, but the inclusion of the judiciary makes the attempt unconstitutional.

Having found that the composition and placement of the Commission is unconstitutional, the court will not apply the guidelines promulgated by the Commission. The court will sentence defendants as if they had committed their crimes prior to November 1, 1987.

Accordingly, defendant's motion to preclude application of the sentencing guidelines is GRANTED.